UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20076-CIV-KING/DUBÉ

**CONSENT CASE**

JOLINDA METAYER,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## **MEMORANDUM ORDER**

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #25) and the Motion for Summary Judgment filed by the Defendant (D.E. #29) pursuant to the consent of the parties and an Order of Reference entered by the Honorable James Lawrence King, United States District Judge. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff Jolinda Metayer (hereinafter "Metayer" or "Plaintiff").

### **I. FACTS**

Metayer filed applications for disability insurance benefits and supplemental security income benefits (SSI) on June 27, 1997. (R. 96, 261).[1] These applications were denied following a hearing. (R. 14-27). The Plaintiff ultimately appealed this denial to the United States District Court, and the cause was remanded for further proceedings. (R. 652). Following remand and additional hearings

---

[1] All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

(R. 551-650), the ALJ issued a decision denying the request for benefits. (R. 536-550). A request for review filed with the Appeals Council was denied. (R. 528).

The Motion for Summary Judgment filed by the Plaintiff focuses on errors alleged to have been committed by the ALJ following the earlier remand of this case. Accordingly, this Court will focus the recitation of the facts on the hearing held and actions taken following the remand on May 1, 2002.

The remand was the result of an agreed Motion to Remand filed by the Defendant. The order granting this motion provided for the ALJ to do the following:

> (1) Obtain updated records from Plaintiff's treating sources including any records of testing or treatment for a pulmonary condition;
>
> (2) Address D.T. Jayweera, M.D.'s opinion (Tr. 243) that Plaintiff was disabled and contact him for a medical source statement covering the entire period at issue and for supporting clinical and laboratory findings;
>
> (3) Articulate the weight accorded to Dr. Jayweera's opinion and all other opinion evidence of record;
>
> (4) Re-contact any sources from which illegible copies of medical evidence were obtained for legible copies of such evidence; and,
>
> (5) Obtain a consultative examination(s) as needed, in the absence of obtaining legible copies of medical evidence.

(R. 652-653).

A hearing following remand was held on October 21, 2003. (R. 564-650). At the start of the hearing, the ALJ recounted the Plaintiff's prior testimony for the medical expert who was present to testify. Counsel for the Plaintiff acknowledged that the ALJ's notes of the testimony were accurate. (R. 569-577).

The medical expert, Eugene Bloom, M.D. testified he was a board certified internist and that he had reviewed the medical evidence presented. Dr. Bloom stated that he agreed with the residual functional capacity assessment made by the ALJ in January 1999. (R. 587). The doctor also testified that he disagreed with a finding made by Dr. Jayaweera in 1997 (R. 243) that the Plaintiff's illness prevented employment, adding that there was no objective findings to support that statement. (R. 587-588). After discussing the Plaintiff's fatigue, Dr. Bloom stated that it appeared that the Plaintiff was "doing pretty darn good." (R. 609).

Dr. Bloom also agreed with the findings made by the ALJ that the Plaintiff could walk for two hours continuously, sit for eight hours, frequently engage in climbing, balancing, stooping, crouching, kneeling and crawling and was limited to lifting/carrying thirty pounds occasionally and twenty pounds frequently. (R. 612). Dr. Bloom later expressed some reservation as to the walking finding, concluding that the Plaintiff could walk and stand for a two hour period of time, for a total of six hours of an eight hour day with reasonable breaks. (R. 614).

Dr. Bloom also testified that the Plaintiff's impairments did not meet or equal any listing of impairment from January 1, 1999 until the time of the hearing. (R. 618-619). He added that the Plaintiff's residual functional capacity also remained the same until the time of the hearing. (R. 619). Dr. Bloom also found that the Plaintiff would be limited to occasionally crawl, crouch and kneel due to her weight. (R. 622). Metayer was also able to go up stairs or ramps, but not ladders, scaffolds or ropes. (R. 623). Dr. Bloom also determined that the Plaintiff should be restricted from being in an excessively hot or cold environment, such as a freezer or a place that was "really hot, non-air conditioned." (R. 624-625).

A vocational expert, Nicholas Fidanza, also testified at the hearing. Fidanza described the

Plaintiff's prior position as a nurse's assistant as semi-skilled with a medium level of exertion. (R. 638). The ALJ presented Fidanza with a hypothetical in which the person could lift/carry thirty pounds occasionally and twenty pounds frequently; sit for eight hours a day, including two hours uninterrupted; stand for two hours at one time, with a total of four to six hours of an eight hour day. The person could also walk for one hour, and a total of four hours in an eight hour day. Additionally, the person could climb stairs and a ramp occasionally as well as a low ladder, but never use a high ladder, rope or scaffold. The person could also kneel, crouch or crawl only occasionally due to her weight and could not be exposed to excessive heat or excessively cold environments. According to the hypothetical, the person should work in an air-conditioned environment, but not a freezer. (R. 640-642). From a mental standpoint, the person in the hypothetical could follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, function independently and maintain concentration. Additionally, she could understand and remember complex, detailed and simple job instructions better than satisfactory. (R. 642-643).

Based on this hypothetical, Fidanza stated that the person would not have any transferability of skills to less physically demanding work. (R. 643). However, the vocational expert also testified that there was other work that the person could perform such as electronics accessories assembly; injection molding tender and gate tender. (R. 644-646). Fidanza added that the person would be able to perform the jobs of electronics assembler, gate guard and injection molder even if limited to simple, routine tasks. (R. 647).

In response to questions from counsel for the Plaintiff, Fidanza acknowledged that some of the factories where the jobs cited took place were not air conditioned as were some of the gate booths, but Fidanza was unable to indicate the percentages. (R. 648-649).

The ALJ issued her decision on February 3, 2004. This Court notes that the decision includes an extensive recitation of the medical reports and records. (R. 536-55). The ALJ found that the Plaintiff's impairments of HIV, hypertension, diabetes mellitus and depression were severe, but did not meet or equal the severity in the listing of impairments. The ALJ also determined that the fatigue and respiratory impairment asserted by the Plaintiff were not severe. (R. 538). According to the ALJ, the Plaintiff retained the residual functional capacity for a limited range of medium work. The ALJ detailed this finding as follows:

> Specifically, she could walk for an hour at a time for a total of four hours in a day, could stand for two hours for a total of four to six hours in a day, could sit for two hours continuously for a total of eight hours in a day, and could lift, carry, push, and pull up to thirty pounds occasionally and 20 pounds frequently. She could occasionally climb stairs, a low ladder, or ramp, and could occasionally stoop to the floor, crouch, kneel, crawl, and frequently stoop to 50% flexion of the spine. She could never climb ropes, scaffolds, or high ladders. There is no limitation in the use of her hands for repetitive fine or gross manipulation, and there are no environmental restrictions, although she should not be in an excessively hot or cold environment. These are essentially the limitations adduced during Dr. Bloom's testimony and are essentially the same as those found by the undersigned in the decision of January 6, 1999. Dr. Bloom commented that she should work in an air-conditioned environment, but that conclusion is not accepted as there is no basis for it in the record. Clearly a work environment that is not excessively hot is found reasonable and acceptable by the undersigned. In addition to these physical limitations, the claimant also has an affective disorder that is "severe" as defined in the Regulations. Note has been taken that no severe mental impairment was alleged or treated prior to June 2003. Before that time the undersigned concludes that she retained good abilities to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, function independently, and maintain attention and concentration. She had a fair ability to deal with work stresses. After June 2003, she retained the ability to perform at least simple, routine, repetitive tasks (SSR 96-8p).

(R. 546-547).

Based on this determination, the ALJ found that the Plaintiff could not perform her past relevant work. (R. 548). However, the ALJ, relying on the testimony from the vocational expert, further found that the Plaintiff was capable of performing a significant number of jobs in the national economy, and thus, was not disabled. (R. 548-549).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No

presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1236 (11th Cir. 1991); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); <u>See also</u>, <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1389 (11th Cir. 1982).

Regulations promulgated by the Commissioner establish a five-step sequential analysis to arrive at a final determination of disability. <u>See</u>, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920(a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520 (c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. <u>See</u>, <u>Gibson v. Heckler</u>, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

In the present case, the ALJ found, at step five, that the Plaintiff could not perform her past relevant work, but retained the residual functional capacity for a reduced range of medium work, and thus, was not disabled. The Plaintiff contends the ALJ erred as follows: (1) by failing to comply with various provisions of the Order of Remand, (2) by misinterpreting the testimony of the vocational expert, (3) by making a finding relating to the Plaintiff's mental limitation that was not based on substantial evidence and (4) by improperly evaluating the Plaintiff's obesity. Each of these contentions will be addressed below.

In her first argument, the Plaintiff contends that the ALJ failed to follow the Order of Remand by not providing consultative examinations, by not obtaining a medical source statement as required, by not contacting treating physician Dr. Jayaweera and by failing to articulate the weight accorded to the opinion submitted by Dr. Jayaweera. The Court notes that two additional arguments raised by the Plaintiff relating to the ALJ's failure to develop the record and to contact the treating

physician raise essentially the same arguments addressed in this first issue.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

The Order of Remand provides that the ALJ should obtain consultative examinations "as needed" if legible copies of medical evidence could not be obtained. However, a review of the record shows that additional records were in fact submitted by the Plaintiff. Additionally, while Dr. Bloom expressed some inability to read certain portions of some of the records, there is no showing that he was unable to determine the course of treatment and the condition of the Plaintiff as contained in the records. Furthermore, Dr. Bloom did not express any indication that he could not reach an opinion concerning the Plaintiff's condition based on the record as provided. Accordingly, no error is present.

The Plaintiff also argues that the ALJ failed to obtain a medical source statement from Dr. Jayaweera and additionally failed to articulate the weight accorded to his opinion. However, a review of the record shows two letters from Dr. Jayaweera, one dated December 10, 1998 and the other dated August 5, 1999. (R. 284, 739). The ALJ apparently had all of the records from the doctor contained in the record, as supplemented by counsel following remand. In reviewing these records, the ALJ determined that the opinion was "not supported by clinical findings, diagnostic procedures,

or laboratory data," and appeared to vastly overstate the degree of functional impairment. (R. 547). Since this determination is in fact supported by substantial evidence, there would be no impact from an additional source statement by the doctor which would cover what is already contained in the record and properly discounted.

The Court also rejects the Plaintiff's contention that the ALJ erred by not requiring Dr. Jaywerra to appear at the hearing. As noted during the hearing, the ALJ rejected the request (R. 720) based on the failure to set forth any showing that it was required. (R. 595-596). No such showing has been made in this case, and thus, there is no error.

In her second argument, the Plaintiff contends that the Commissioner failed to meet its burden at step five since the testimony by the vocational expert did not set out the number of jobs which existed which met the requirements of the Plaintiff's environmental restrictions concerning the need to avoid excessive heat.

The hypothetical provided to the vocational expert included the restriction that the Plaintiff not be exposed to excessive heat or excessively cold environments and should work in an air-conditioned environment. (R. 642). In response, the vocational expert listed available jobs including electronic accessories assembly, injection molding tender and gate tender. When questioned by counsel for the Plaintiff about the availability of air conditioning in these jobs, the vocational expert indicated that many, but not all, of the facilities would be air conditioned, but he could not say how many fell into either category. (R. 648-649).

While the vocational expert was not able to provide a specific number of such facilities, he did testify that there were a great number of potential positions both locally and nationwide. (R. 644-646). Under these circumstances, and even accounting for a percentage of workplaces that would

not be acceptable, this Court finds that the Commissioner met its burden at step five of showing other work available in significant numbers in the national economy which the Plaintiff could perform. Accordingly, there is no basis for error.

In her third argument, the Plaintiff contends that the ALJ's determination that she could only perform simple, routine, repetitive tasks is not supported by substantial evidence and that a remand is required for a mental health consultative evaluation.

The record before the Court does not show a great deal of evidence relating to the Plaintiff's depression, but rather, it consists primarily of references in the treatment notes of Dr. Jayaweera and a handwritten letter from Dr. Molina. (R. 722). The ALJ included these findings in her decision (R. 544-545) prior to rejecting the opinion of Dr. Molina as not supported by the evidence. However, the ALJ then found that after June 2003, the Plaintiff retained the ability to perform at least simple, routine, repetitive tasks. (R. 547). As correctly noted by the Plaintiff, this determination, which follows from the finding that the Plaintiff suffered from the severe impairment of depression, was made by the ALJ without any supporting medical evidence. Based on the lack of support for this conclusion, this Court finds that a remand is necessary for a mental health consultative evaluation to properly determine the extent of the Plaintiff's mental impairment.

The final contention raised by the Plaintiff asserts that the ALJ's evaluation of the Plaintiff's obesity and its impact on her functional ability was not done in compliance with Social Security Ruling 02-01p, and thus, reversal is required. The Court finds that this argument is without merit. The ALJ set out the effect of the Plaintiff's obesity on her medical condition overall and these limitations were taken into account by both testifying medical expert Dr. Bloom (R. 619-624) and by the ALJ in making the residual functional capacity determination. (R. 546). Accordingly, there

is no basis for error.

## II. <u>CONCLUSION</u>

Based on the foregoing, the Court finds that the ALJ erred in determining the extent of the Plaintiff's mental impairment and that a remand is required solely on that basis. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

(1) The Motion for Summary Judgment filed by the Plaintiff (D.E. #25) is **GRANTED in part.**

(2) The Motion for Summary Judgment filed by the Defendant (D.E. #29) is **DENIED.**

(3) The decision of the Commissioner is REVERSED and this cause REMANDED for further proceedings consistent with this Order.

**DONE AND ORDERED** this __11__ day of June, 2007.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE

cc: Marlene Rodriguez, AUSA
　　Victor Mantel, Esq.